Brad D. Rose
Dyan Finguerra-DuCharme
Ryan S. Klarberg
PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036
Tel: (212) 421-4100
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MERCHDIRECT LLC,<br><br>                              Plaintiff,<br><br>        - against -<br><br>SUNFROG LLC, JOSH KENT, JOHN DOES 1-10 d/b/a SUNFROG.COM, JANE DOES 1-10 and XYZ COMPANIES 1-10,<br><br>                              Defendants. | Civil Action No. _____<br><br>**COMPLAINT**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiff MerchDirect LLC ("Plaintiff"), by its attorneys Pryor Cashman LLP, alleges as follows against Defendants SunFrog LLC, Josh Kent, John Does 1-10 d/b/a Sunfrog.com, Jane Does 1-10 and XYZ Companies 1-10 (collectively, "Defendants"):

<u>**NATURE OF ACTION**</u>

1.      This is an action for willful trademark infringement, unfair competition, and trademark dilution, among other statutory and common law violations.  Defendants have willfully traded upon the goodwill and notoriety of Deftones, a Grammy® Award-winning American alternative metal band by selling unauthorized merchandise bearing the Deftones' trademarks.  In particular, Defendants have offered for sale and/or are offering for sale and selling the unauthorized merchandise below, which brazenly display the DEFTONES trademark and SKULL mark (in design form) (collectively, the "DEFTONES and SKULL Marks"):

 

*Defendants' Unauthorized Merchandise*

2.      Upon information and belief, Defendants are using the DEFTONES and SKULL Marks to falsely designate Plaintiff, the exclusive licensee of these marks for merchandise, as the source of the Defendants' products and/or to falsely associate Plaintiff with these unauthorized products.

3.      Defendants prominently display the DEFTONES mark in a stylized form that is nearly identical to Plaintiff's stylization, as shown below:

               

*Plaintiff's Stylization*                    *Defendants' Stylization*

4.      Deftones' self-titled studio album *Deftones* featured a skull design with roses displayed behind it.  Since the release of the album in 2003, Deftones has used the SKULL mark as a source identifying trademark for a wide array of merchandise, as depicted below:

 

*Example of Plaintiff's Merchandise*
*Bearing the* SKULL mark

5.      Through its continuous use of the SKULL mark, Deftones has developed significant common law rights in the mark.

6.      Fully aware of Deftones' common law rights, Defendants have misappropriated the SKULL mark as shown on the merchandise depicted above.  Defendants' use of the SKULL mark in conjunction with the DEFTONES mark is likely to exacerbate the likelihood of consumer confusion.

7.      Despite correspondence from Plaintiff to Defendants demanding that they cease and desist their infringing activities, Defendants continued to sell unauthorized products at Defendants' online store located at <sunfrog.com>.  Defendants' actions constitute willful infringement.

8.      Defendants' actions have caused and are causing immediate and irreparable harm to Plaintiff.  To redress the harm that the Defendants are causing to Plaintiff and to the public, Plaintiff brings claims for trademark infringement under Section 32(1) of the United States

Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. § 1114(1); unfair competition and false endorsement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and related claims under New York's statutory and common law. Plaintiff seeks injunctive and monetary relief on account of Defendants' egregious, willful and wanton activities, including exemplary damages, attorneys' fees and costs.

## PARTIES

9.     Plaintiff MerchDirect LLC ("MerchDirect") is a New York limited liability company with its principal place of business in Bay Shore, New York. MerchDirect, an exclusive licensee of Deftones, creates, designs, develops, manufactures, distributes, advertises, promotes, and sells merchandise bearing the DEFTONES mark.

10.     Upon information and belief, defendant SunFrog LLC is a Michigan limited liability company with an address at 1782 O'Rourke Boulevard, Gaylord, Michigan 49735.

11.     Upon information and belief, defendant Josh Kent is an individual with an address at 1782 O'Rourke Boulevard, Gaylord, Michigan 49735. Upon information and belief, Josh Kent is the owner and Chief Executive Officer of SunFrog LLC, and he exercises control over its operations and policies, including those policies governing compliance with copyright and trademark laws.

12.     Upon information and belief, defendants John Does 1-10 d/b/a Sunfrog.com are individuals and/or entities that are not presently known, and the Complaint herein will be amended to include the name or names of these individuals or entities when such information becomes available. Upon information and belief, defendants John Does 1-10 d/b/a Sunfrog.com have an address at 1782 O'Rourke Boulevard, Gaylord, Michigan 49735.

13.     Upon information and belief, Defendants identified as Jane Does 1-10 are individuals who acted for, in concert with or through the named Defendants, and are subject to the jurisdiction of this Court.  The identities of the various John Does are not presently known, and the Complaint herein will be amended to include the name or names of these individuals when such information becomes available.

14.     Upon information and belief, Defendants identified as XYZ Companies 1-10, have, through their agents, servants and employees, acted for, in concert with, through, over or under the named Defendants, and are subject to the jurisdiction of this Court.  The identities of the various XYZ Companies are not presently known, and the Complaint herein will be amended to include the name or names of these companies when such information becomes available.

## JURISDICTION AND VENUE

15.     Jurisdiction is proper in this Court pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1125, 1331, 1338(a) & (b) and 1367, because the action involves claims arising under the Lanham Act and related state law claims.

16.     This Court has personal jurisdiction over Defendants because, upon information and belief, Defendants are doing business in New York, have contracted to supply goods or services in New York, the claims at issue arise out of their transaction of business and/or supplying goods and services directed to consumers residing in New York, and/or Defendants have committed infringing acts outside of New York causing injury to Plaintiff in New York and/or Defendants regularly do or solicit business in New York and/or derive substantial revenue from goods used or services rendered in New York and/or expect or reasonably should expect their infringing conduct to have consequences in New York and derive substantial revenue from

interstate commerce.  These activities fall within the long-arm statute of the State of New York, CPLR §§ 301 and 302(a).

17.    Venue is proper in this District pursuant to  28 U.S.C.  § 1391 because the Defendants are transacting business and committing tortious acts within the State of New York and this District.

## FACTS

I.  **Plaintiff and Its Business**

18.    Deftones is an internationally renowned Grammy® Award-winning American alternative metal band that started in 1988 in Sacramento, California.

19.    *Spin* magazine recognized the group as "[t]he most popular metal band ever birthed from California's state capital," and for nearly three decades, Deftones maintained a dedicated following of music fans.  Deftones pioneered alternating heavy riffs and screamed vocals with more ethereal music and hushed singing -- spawning a fair amount of imitators in their wake.

20.    Deftones' first commercially released album in 1995 was *Adrenaline*, which achieved success on the *Billboard* Heatseekers Albums chart.  Deftones vaulted to national prominence after its release of the LPs *Around the Fur* (1997), which peaked at No. 1 on the *Billboard* Heatseekers Albums chart and was the band's first international success, and *White Pony* (2000), which was released to critical acclaim and unprecedented commercial success, peaking at No. 3 in the United States.  The band released the eponymous *Deftones* album in 2003, peaking at No. 2 in the United States and also garnered widespread international success.  Most recently in April 2016, Deftones released its eighth studio album *Gore*, which received extensive critical acclaim, and debuted at No. 2 on the U.S. *Billboard 200* and at No. 1 on New Zealand

and Australia's top album charts. *Gore* was the band's fifth album to debut within the *Billboard 200* Top 10 and is its highest-charting album since its self-titled 2003 album.

21.     Since its founding, Deftones have released eight studio albums, three extended plays, three compilation albums, one demo album and twenty singles.   Three of Deftones' albums have been certified Platinum® by the Recording Industry Association of America® (RIAA) in recognition of shipments exceeding one million copies.

22.     Deftones' brand is strong – Deftones goods and services have generated millions of dollars in sales.

23.     Deftones is the source of widespread unsolicited media attention and has been the subject of thousands of articles, including *Rolling Stone* and *Billboard*, to name just a few publications.

24.     Deftones is the owner of the DEFTONES mark, Reg. No. 2,369,966, for use in connection with clothing and entertainment services.   Deftones has been using the DEFTONES mark in connection with its entertainment services since at least as early as 1989.   The DEFTONES mark has been renewed and has attained incontestable status.   A true and accurate copy of the U.S. trademark registration certificate for Reg. No. 2,369,966, is attached hereto as Exhibit A.

25.     Deftones also owns all common law right, title and interest in and to the following SKULL mark, and Plaintiff holds the right to market and sell goods bearing the mark:



26.     Deftones' official merchandise, including t-shirt, sweatshirts, tank tops, hats and accessories sold under the DEFTONES mark and/or SKULL mark, is offered for sale at <deftones.merchdirect.com>.

27.     MerchDirect, an exclusive licensee of Deftones, creates, designs, develops, manufactures, distributes, advertises, promotes, and sells merchandise bearing the DEFTONES and SKULL Marks.

28.     Plaintiff has invested considerably in creating, maintaining and promoting the goodwill associated with the DEFTONES brand name and SKULL mark, including significant sums spent on advertising and promotion.  In addition to traditional advertising, Plaintiff markets and promotes its products and services through websites and social media platforms.

29.     Deftones is immensely popular with the general consuming public as evidenced by, *inter alia*, its over 2.8 million "likes" on its Facebook page, located at <facebook.com/deftones>, not to mention its sold-out concerts and platinum-selling albums.

30.     Through its success in music for nearly three decades, including its sold-out musical performances and Platinum®-selling albums, and its consistent production of high quality goods and services, its extensive advertising and promotional efforts, including in connection with the sale of clothing, its international public and media appearances, and the solicited and unsolicited publicity that Deftones has received, the DEFTONES and SKULL Marks are famous, have garnered goodwill of incalculable value, and are substantial commercial assets.

31.     To maintain the strength of Deftones' intellectual property, Plaintiff vigilantly protects and enforces this intellectual property on a worldwide basis.

## II.  **Defendants and Their Infringing Activities**

32.     Upon information and belief, Defendants own the domain name <sunfrog.com> and operate a retail website at the domain that sells infringing merchandise ("Defendants' Website").

33.     Defendants are not authorized to manufacture, market, promote or sell products bearing the DEFTONES trademark or the SKULL mark.  Nevertheless, in a deliberate attempt to profit from the goodwill associated with Deftones and its intellectual property, Defendants purposefully sell clothing bearing the DEFTONES and SKULL Marks on clothing without authorization.

34.     Upon information and belief, Defendants began using the DEFTONES and SKULL Marks years after Deftones established its rights in these marks.

35.     Upon learning of Defendants' activities, Plaintiff sent correspondence to Defendants demanding that they permanently cease and desist from marketing, promoting, manufacturing, offering for sale and selling any products or services that use the Deftones' marks.

36.     In willful disregard of Deftones' intellectual property rights, of which Defendants were on actual notice, Defendants continued to market, promote, manufacture and offer for sale products that infringe Deftones' rights and cause consumer confusion.  Such ongoing conduct reflects Defendants' defiance and willful intent to infringe and violate Deftones' rights.

## III.    **Plaintiff Is Suffering Irreparable Harm**

37.     Defendants have undertaken activities in connection with the sale and promotion of products that are likely to cause consumer confusion as to the source or origin of their goods. In particular, consumers are likely to mistakenly believe that Plaintiff is the source of Defendants'

products bearing the DEFTONES mark and/or the SKULL mark, or at that minimum that Deftones is affiliated with, sponsored or has endorsed such products.

38.     The likelihood of confusion, mistake and deception created by Defendants' sale of the infringing products, as well as the dilution of the DEFTONES and SKULL Marks by such sales, are causing irreparable harm to Plaintiff and the goodwill associated with Deftones' brand name.

39.     Upon information and belief, Defendants know, and at all relevant times knew, that consumers were likely to believe that Defendants' products bearing the DEFTONES mark and/or SKULL mark were authorized, sanctioned or licensed by Plaintiff, even though they were not.

40.     Upon information and belief, Defendants undertook the actions described herein with the deliberate intent to create confusion as to the source, sponsorship and quality of Defendants' products and to dilute the distinctiveness of the DEFTONES and SKULL Marks.

41.     Upon information and belief, Defendants undertook the actions described herein to mislead consumers into believing that Deftones has endorsed, sponsored or is somehow associated with the unauthorized merchandise.

42.     Upon information and belief, Defendants adopted the DEFTONES and SKULL Marks to, at a minimum, call to mind Deftones and its music.

43.     Defendants' conduct described herein is intentional, fraudulent, malicious, willful and wanton.

44.     Defendants' conduct has injured Plaintiff, and if not enjoined, will continue to injure Plaintiff.

45.     Defendants' unlawful actions described herein commenced many years after Deftones began using the DEFTONES and SKULL Marks, many years after the DEFTONES and SKULL Marks achieved worldwide fame, and many years after Deftones registered its DEFTONES trademark in the United States.

46.     Plaintiff will suffer irreparable harm to its business reputations and the goodwill associated with the DEFTONES brand and SKULL mark because it has no control over Defendants' products.

47.     Plaintiff will also suffer irreparable harm because Defendants' use of the Deftones' mark dilutes the distinctiveness of Deftones' famous trademarks.

48.     Defendants' deceptive conduct is harming the public in addition to harming Plaintiff and its brand.

**FIRST CLAIM**
**FEDERAL TRADEMARK INFRINGEMENT**
**15 U.S.C. § 1114**

49.     Plaintiff hereby repeats and realleges the foregoing Paragraphs of the Complaint as if fully set forth herein.

50.     Deftones owns all right, title and interest in and to the DEFTONES mark.

51.     Plaintiff MerchDirect holds the exclusive license to design, market, manufacture and sell products bearing the DEFTONES mark.

52.     Defendants have used in commerce, without Plaintiff's permission, the DEFTONES trademark in a manner that is likely to cause confusion or mistake or deceive purchasers as to the source of Defendants' goods and/or cause consumers to mistakenly believe that there is an affiliation, connection, approval, sponsorship or association of Plaintiff and/or its

goods, services and commercial activities, on the one hand, with Defendants and/or their respective goods, services or commercial activities, on the other hand.

53.     Defendants' acts constitute infringement of the DEFTONES trademark under 15 U.S.C. § 1114.

54.     As a direct and proximate result of Defendants' wrongful acts, Plaintiff has suffered and continues to suffer and/or is likely to suffer damage to its trademarks, business reputation and goodwill.  Defendants will continue to use, unless restrained, Deftones' mark or marks confusingly similar thereto and will cause irreparable damage to Plaintiff.  Plaintiff has no adequate remedy at law and are entitled to an injunction restraining Defendants, their respective officers, agents, and employees, and all persons acting in concert with Defendants, from engaging in further acts of infringement.

55.     Plaintiff is further entitled to recover from Defendants the actual damages that it has sustained and/or is likely to sustain as a result of Defendants' wrongful acts.

56.     Plaintiff is further entitled to recover from Defendants the gains, profits and advantages that Defendants have obtained as a result of their wrongful acts.

57.     Because of the willful nature of Defendants' wrongful acts, Plaintiff is entitled to an award of exemplary damages under the common law, and treble damages and increased profits under 15 U.S.C. § 1117.

## SECOND CLAIM
## FEDERAL UNFAIR COMPETITION
## 15 U.S.C. § 1125(A)

58.     Plaintiff hereby repeats and realleges the foregoing Paragraphs of the Complaint as if fully set forth herein.

59.     Deftones owns all right, title and interest in and to the DEFTONES and SKULL Marks.

60.     Plaintiff MerchDirect holds the exclusive license to design, market, manufacture and sell products bearing the DEFTONES  and SKULL Marks.

61.     Defendants have used in commerce marks that are substantially similar to the DEFTONES and SKULL Marks on unauthorized merchandise.

62.     Defendants' unlawful acts in appropriating rights in the DEFTONES and SKULL Marks are and were intended to capitalize on Plaintiff's goodwill for Defendants' own pecuniary gain.

63.     Defendants' unauthorized use of the DEFTONES and SKULL Marks have caused and are likely to cause confusion as to the source of Defendants' products, all to the detriment of Plaintiff.

64.     Defendants' conduct as alleged herein, including their unauthorized use of the DEFTONES and SKULL Marks on merchandise, constitutes a false designation of origin as such conduct is likely to cause confusion and/or to deceive users and consumers as to the origin, sponsorship, affiliation, connection and/or association of Plaintiff with Defendants' goods and/or services.

65.     Defendants' products bearing the DEFTONES and SKULL Marks are calculated and intended to deceive and are likely to deceive consumers into believing that they are Plaintiff's products and/or Deftones is associated with the merchandise.

66.     Defendants have chosen to present the DEFTONES mark in the similar font, color and style that Plaintiff depicts the DEFTONES mark on similar merchandise.

67.     Defendants have chosen to present the SKULL mark in the identical manner that Plaintiff depicts the SKULL mark on similar merchandise.

68.     Defendants are capitalizing on and profiting from the likely consumer confusion between their infringing merchandise bearing the DEFTONES mark and/or SKULL mark, on the one hand, and Plaintiff's authentic merchandise bearing the DEFTONES and/or SKULL mark, on the other hand.

69.     Plaintiff does not now and has never sponsored or approved or authorized Defendants' use of the DEFTONES mark, the SKULL mark or other intellectual property.

70.     Defendants' conduct is willful and deliberate and done with the intent to unfairly commercially benefit from the goodwill associated with Plaintiff and Deftones' brand, music and trademarks.

71.     The foregoing acts of Defendants constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

72.     Defendants' unfair competition has caused and is causing great and irreparable harm and damage to Plaintiff, and unless permanently restrained and enjoined by this Court, such irreparable harm will continue.

73.     As a direct and proximate result of Defendants' wrongful acts, Plaintiff has suffered and continues to suffer and/or is likely to suffer damage to its trademarks, business

reputation and goodwill.  Defendants will continue to use, unless restrained, Deftones' marks, and/or marks confusingly similar thereto, and Defendants will cause irreparable damage to Plaintiff.  Plaintiff has no adequate remedy at law and is entitled to an injunction restraining Defendants, their respective officers, agents, and employees, and all persons acting in concert with Defendants, from engaging in further acts of infringement and unfair competition.

74.     Plaintiff is further entitled to recover from Defendants the actual damages that it sustained and/or is likely to sustain as a result of Defendants' wrongful acts.

75.     Plaintiff is further entitled to recover from Defendants the gains, profits and advantages that Defendants have obtained as a result of their wrongful acts.

76.     Because of the willful nature of Defendants' wrongful acts, Plaintiff is entitled to an award of exemplary damages under the common law, and treble damages and increased profits under 15 U.S.C. § 1117.

### THIRD CLAIM
### FEDERAL TRADEMARK DILUTION
### 15 U.S.C. § 1125

77.     Plaintiff hereby repeats and realleges the foregoing Paragraphs of the Complaint as if fully set forth herein.

78.     Deftones owns all right, title and interest in and to the DEFTONES and SKULL Marks.

79.     The DEFTONES and SKULL Marks are famous and distinctive marks entitled to protection under 15 U.S.C. § 1125.

80.     Deftones began using the DEFTONES trademark to identify its goods and services at least as early as 1989, which is, upon information and belief, long before Defendants began promoting and offering goods under the DEFTONES mark.

81.     Deftones began using the SKULL mark trademark to identify its goods and services at least as early as 2003, which is, upon information and belief, long before Defendants began promoting and offering goods under the SKULL mark.

82.     Upon information and belief, the DEFTONES and SKULL Marks became famous long before Defendants adopted the DEFTONES and SKULL Marks.

83.     Defendants' use of the DEFTONES and SKULL Marks is likely to dilute the distinctive quality of the famous DEFTONES and SKULL Marks in violation of 15 U.S.C. § 1125(c).

84.     Defendants' acts complained of herein are likely to irreparably damage Plaintiff.

85.     Plaintiff has no adequate remedy at law for such wrongs and injuries.

86.     Plaintiff is further entitled to recover from Defendants for the actual damages sustained by Plaintiff as a result of Defendants' wrongful acts.

87.     Plaintiff is further entitled to recover from Defendants the gains, profits and advantages Defendants have obtained as a result of their wrongful acts.

88.     Because of the willful nature of Defendants' actions, Plaintiff is entitled to all remedies available under 15 U.S.C. §§ 1117 and 1118, including, but not limited to, treble damages.

**FOURTH CLAIM**
**DECEPTIVE ACTS AND PRACTICES**
**NEW YORK GENERAL BUSINESS LAW § 349**

89.     Plaintiff hereby repeats and realleges the foregoing Paragraphs of the Complaint as if fully set forth herein.

90.     Deftones owns all right, title and interest in and to the DEFTONES and SKULL Marks.

91.     Plaintiff MerchDirect holds the exclusive license to design, market, manufacture and sell products bearing the DEFTONES  and SKULL Marks.

92.     Upon information and belief, consumers identify the DEFTONES and SKULL Marks exclusively with Plaintiff and Deftones.

93.     Upon information and belief, Defendants, without Plaintiff's authorization or consent, and having knowledge of Plaintiff's rights, offer and/or have offered goods for sale to the public in direct competition with Plaintiff.

94.     Upon information and belief, Defendants' use of Deftones' name, marks and/or other intellectual property is likely to cause and is causing confusion, mistake and deception among the general purchasing public as to the origin of the Defendants' products, and is likely to deceive the public into believing that goods and/or services being offered for sale by Defendants originate from, are associated with, or are otherwise authorized by Plaintiff.

95.     Upon information and belief, Defendants' deceptive acts and practices involve public sales activities of a recurring nature.

96.     The acts of Defendants have caused and are causing great and irreparable harm and damage to Plaintiff, and unless permanently restrained and enjoined by this Court, such irreparable harm will continue.

**FIFTH CLAIM**
**TRADEMARK DILUTION**
**NEW YORK GEN. BUS. L. § 360-L**

97.     Plaintiff hereby repeats and realleges the foregoing Paragraphs of the Complaint as if fully set forth herein.

98.     Deftones owns all right, title and interest in and to the DEFTONES and SKULL Marks.

99.     The DEFTONES and SKULL Marks are famous and distinctive marks within the meaning of New York Gen. Bus. L. § 360-l.

100.     Deftones began using the DEFTONES trademark to identify its goods and services at least as early as 1989, which is, upon information and belief, long before Defendants began promoting and offering goods under the DEFTONES mark.

101.     Deftones began using the SKULL mark to identify its goods and services at least as early as 2003, which is, upon information and belief, long before Defendants began promoting and offering goods under the SKULL mark.

102.     Upon information and belief, the DEFTONES and SKULL Marks became famous long before Defendants adopted the DEFTONES and SKULL Marks.

103.     Defendants' use of the DEFTONES and SKULL Marks is likely to dilute the distinctive quality of Deftones' famous DEFTONES and SKULL Marks in violation of New York Gen. Bus. L. § 360-l.

104.     Defendants' acts complained of herein are likely to damage Plaintiff irreparably.

105.     Plaintiff has no adequate remedy at law for such wrongs and injuries.   The damage to Plaintiff includes harm to the DEFTONES and SKULL Marks, goodwill and reputation that money cannot compensate.   Plaintiff is, therefore, entitled to a preliminary and

permanent injunction enjoining Defendants' use of Deftones' famous trademarks, and/or marks substantially similar thereto, or any marks dilutive of Deftones' famous trademarks in connection with the promotion, advertisement and sale of any goods, services or commercial activities by Defendants.

106.    Plaintiff is further entitled to recover from Defendants for the actual damages sustained by it as a result of Defendants' wrongful acts.

107.    Plaintiff is further entitled to recover from Defendants the gains, profits and advantages Defendants have obtained as a result of their wrongful acts.

108.    Because of the willful nature of Defendants' actions, Plaintiff is entitled to all remedies under New York General Business Law.

<u>SIXTH  CLAIM</u>
**COMMON LAW UNFAIR COMPETITION**

109.    Plaintiff hereby repeats and realleges the foregoing Paragraphs of the Complaint as if fully set forth herein.

110.    Deftones owns all right, title and interest in and to the DEFTONES and SKULL Marks.

111.    Plaintiff MerchDirect holds the exclusive license to design, market, manufacture and sell products bearing the DEFTONES and SKULL Marks.

112.    Consumers identify the DEFTONES and SKULL Marks exclusively with Deftones.

113.    Plaintiff and Deftones have expended substantial time, resources and effort to develop and obtain a strong reputation in the marketplace and enormous goodwill in the DEFTONES and SKULL Marks.

114.   Defendants have infringed the DEFTONES and SKULL Marks by using the DEFTONES and SKULL Marks without authorization.  Defendants' unlawful acts are intended to capitalize on Plaintiff and Deftones' goodwill for Defendants' own pecuniary gain.

115.   Defendants' use of the DEFTONES and SKULL Marks is calculated to and is likely to create confusion and to deceive and mislead consumers into believing that Defendants' products originate with or are authorized by Plaintiff, and is likely to cause confusion as to the source of Defendants' products, all to the detriment of Plaintiff.

116.   Defendants' acts as alleged herein constitute unfair competition and will, unless enjoined by the Court, continue to result in harm to the goodwill associated with Plaintiff.

117.   Upon information and belief, Defendants committed the acts alleged herein willfully and with the intent to confuse the public and to injure Plaintiff.

118.   The acts of Defendants have caused and are causing great and irreparable harm and damage to Plaintiff, and unless permanently restrained and enjoined by this Court, such irreparable harm will continue.

119.   As a direct and proximate result of Defendants' actions as stated herein, Plaintiff has suffered damage to its reputation and damage to the goodwill of the DEFTONES and SKULL Marks.  Further, Plaintiff is entitled to exemplary damages as a result of Defendants' malicious actions as described above.

## SEVENTH CLAIM
## UNJUST ENRICHMENT

120.   Plaintiff hereby repeats and realleges the foregoing Paragraphs of the Complaint as if fully set forth herein.

121.   Defendants have benefited from the unlawful and infringing use of the DEFTONES and SKULL Marks because, upon information and belief, Defendants have derived

and/or will derive substantial revenue from the sale of goods and/or the rendering of services offered and/or promoted on Defendants' website and elsewhere.

122.    It would be against equity and good conscience to allow Defendants to retain the substantial revenue and profits they have realized and/or will realize through their unlawful use of Deftones' intellectual property.

123.    Defendants have been unjustly enriched by their unlawful use of the DEFTONES and SKULL Marks.

124.    The acts of Defendants have caused and are causing great and irreparable harm and damage to Plaintiff, and unless permanently restrained and enjoined by this Court, such irreparable harm will continue.

125.    As a direct and proximate result of Defendants' actions as stated herein, Plaintiff has suffered damage to its reputation and damage to the goodwill of the DEFTONES and SKULL Marks.  Further, Plaintiff is entitled to exemplary damages as a result of Defendants' malicious actions as described above.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests judgment against Defendants, and their respective partners, agents and employees, and any and all persons in active concert or participation with Defendants, and each of their heirs, executors, administrators, successors, licensees, assigns, subsidiaries, parents, affiliates, divisions, co-venturers, partners, officers, directors, employees, agents, shareholders, managers, representatives, consultants and any and all other persons, corporations or other entities acting under the supervision, direction, control or on behalf of any of the foregoing as follows:

1.    Preliminarily and permanently enjoining Defendants, and their respective partners,

agents and employees, and any and all other persons in active concert or participation with Defendants, and each of their heirs, executors, administrators, successors, licensees, assigns, subsidiaries, parents, affiliates, divisions, co-venturers, partners, officers, directors, employees, agents, shareholders, managers, representatives, consultants and any and all other persons, corporations or other entities acting under the supervision, direction, control or on behalf of any of the foregoing from (a) engaging in the marketing, promotion, offering, rendering, sale or other use in commerce of any products bearing any of the Plaintiff's or Deftones' intellectual property, including the DEFTONES and SKULL Marks, or any other confusingly similar marks, in any manner that may cause confusion or mistake or may deceive the public into believing that such products originate with any of the Plaintiff or Deftones or that there is any affiliation or connection with Plaintiff or Deftones, and from otherwise competing unfairly with Plaintiff; (b) assisting, aiding or abetting any other person or entity in the marketing, promotion, offering, rendering, sale or other use in commerce of any products bearing any of the Plaintiff's or Deftones' intellectual property, including the DEFTONES and SKULL Marks, or any other confusingly similar marks; (c) using any of Plaintiff's or Deftones' intellectual property, including the DEFTONES and SKULL Marks, or any other confusingly similar marks; (d) using any photographs, videos or the name or likeness of Deftones or its members individually in any manner that may cause confusion or mistake or may deceive the public into believing that any of Defendants' products or services originate with Plaintiff or Deftones or that there is any affiliation or connection between Plaintiff and Deftones, on the one side, and Defendants, on the other side, and from otherwise competing unfairly with Plaintiff; (e) using any mark in a manner so as to cause the dilution of the DEFTONES mark and/or the SKULL mark; and (f) representing by any means whatsoever, directly or indirectly, or doing any other acts or things calculated or

likely to cause confusion, mistake or to deceive the public into believing that any of Defendants' goods or services, or websites or stores originate with Plaintiff or Deftones or that there is any affiliation or connection between Plaintiff and Defendants, and from otherwise competing unfairly with Plaintiff;

2.      Awarding Plaintiff damages in amounts pertaining to each to be determined at trial, including compensatory, statutory damages and exemplary damages;

3.      Awarding an accounting to Plaintiff for the gains and profits of the Defendants and for the damages sustained by Plaintiff as a result of the willful, intentional and wrongful conduct of Defendants;

4.      Awarding Plaintiff treble damages on account of the willful nature of the Defendants' infringing acts for an amount to be determined at trial;

5.      Requiring Defendants to pay the Plaintiff its costs and expenses in this action, including attorneys' fees and costs; and

6.      Granting Plaintiff such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        January 23, 2017

                                    Respectfully submitted,

                                    PRYOR CASHMAN LLP

                                    Brad D. Rose (BR-2740)
                                    Dyan Finguerra-DuCharme (DF-9228)
                                    Ryan S. Klarberg (RK-4719)
                                    7 Times Square
                                    New York, New York 10036
                                    Telephone: (212) 421-4100
                                    Fax: (212) 798-6369
                                    brose@pryorcashman.com
                                    dfinguerra-ducharme@pryorcashman.com
                                    rklarberg@pryorcashman.com
                                    *Attorneys for Plaintiff*